## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| BRYLEE McCUTCHEN, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| XAVIER BECERRA, in his official ca- | § | |
| pacity as Secretary of Health and Hu- | § | |
| man Services, et al., | § | Case No. 1:21-cv-01112-TSC |
| | § | |
| Defendants; | § | |
| | § | |
| | § | |
| THE STATE OF TENNESSEE, | § | |
| | § | |
| Proposed Defendant-Intervenor. | § | |

## THE STATE OF TENNESSEE'S MOTION TO INTERVENE AS DEFENDANT

Pursuant to Federal Rule of Civil Procedure 24 and Local Civil Rule 7(j), the State of Tennessee respectfully requests that the Court permit Tennessee to intervene as a matter of right in this matter as a defendant. In the alternative, Tennessee respectfully requests that the Court grant the State permissive intervention. As explained in the attached Memorandum of Points and Authorities, Tennessee has an important and unique interest that will go unrepresented without the State's intervention in this case. Tennessee has also attached a Proposed Answer in Intervention as Exhibit A. *See* Fed. R. Civ. P. 24(c).

Pursuant to Local Civil Rule 7(m), counsel for Tennessee has conferred with counsel for Plaintiffs. Plaintiffs do not oppose this motion. Defendants have not made an appearance, so Tennessee was unable to confer with counsel for Defendants.

May 20, 2021                              Respectfully submitted,

                                          */s/ Scott A. Keller*

                                          Scott A. Keller
                                          D.C. Bar No. 1632053
                                          scott@lehotskykeller.com
                                          Lehotsky Keller L.L.P.
                                          200 Massachusetts Ave. NW
                                          Washington, DC 20001
                                          T: (202) 365-2509
                                          F: (833) 233-2202

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| BRYLEE McCUTCHEN, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| XAVIER BECERRA, in his official ca-pacity as Secretary of Health and Hu-man Services, et al., | § | Case No. 1:21-cv-01112-TSC |
| | § | |
| Defendants; | § | |
| | § | |
| | § | |
| THE STATE OF TENNESSEE, | § | |
| | § | |
| Proposed Defendant-Intervenor. | § | |

**THE STATE OF TENNESSEE'S MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF ITS
<u>MOTION TO INTERVENE AS DEFENDANT</u>**

**INTRODUCTION**

After negotiations between the State of Tennessee and the federal Centers for Medicare and Medicaid Services ("CMS"), CMS approved "TennCare III." TennCare III is a state program for administering Medicaid that permits Tennessee to innovatively deliver healthcare coverage to its eligible citizens. *See* 42 U.S.C. § 1315(a) (granting Health and Human Services ("HHS") Secretary broad discretion to approve "demonstration projects" and waive certain Medicaid requirements). Its new provisions give the State needed flexibility to administer its Medicaid program, and it includes a mechanism for the State to invest its Medicaid savings back into its public health initiatives. Crucially, however, TennCare III will not affect the "benefits and coverage" available to Medicaid-eligible Tennesseans—as these "cannot be reduced." *See* CMS Demonstration Approval and Waiver Letter 10 (Jan. 8, 2021), https://bit.ly/2Rg5lrJ ("Approval Letter"). In fact, CMS determined that approval of the "TennCare III demonstration supports Medicaid's objectives by improving access to high-quality services and expansion of coverage." *Id.* Nevertheless, Plaintiffs have sued CMS, a collection of federal officials, and HHS (collectively, the "Federal Defendants") to vacate the federal government's approval of TennCare III. In response, Tennessee has moved expeditiously to file this Motion to Intervene to defend TennCare III and ensure that the State's voice is heard in this litigation.

This Court should grant Tennessee's motion to intervene and allow the State to represent its unique sovereign interest in defending its state Medicaid program. Tennessee is entitled to intervene as of right under Federal Rule of Civil Procedure

1

24(a) because its interests in TennCare III will not be adequately represented by the Federal Defendants, who cannot assert the State's sovereign interest. In all events, this Court should exercise its discretion to grant Tennessee permissive intervention under Federal Rule of Civil Procedure 24(b) because Tennessee's unique perspective will aid the Court's resolution of this case without causing any prejudice to existing parties.

## BACKGROUND

TennCare III is the latest iteration of Tennessee's successful administration of Medicaid. Like every other State in the Nation, Tennessee participates in Medicaid to provide medical assistance to its eligible citizens. *See* Tenn. Code § 71-5-102(a). Medicaid is an example of cooperative federalism: States take primary authority in administering Medicaid plans, and the federal government pays for a defined percentage of a State's Medicaid expenditures. *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 433 (2004). To participate in Medicaid, States must submit their plans to the HHS Secretary for approval—who must affirm that the plan complies with federal law prescribing who is eligible for Medicaid and what care covered groups may receive. 42 U.S.C. § 1396a(a)(10)(A)(i).

For decades spanning multiple presidential administrations, Tennessee has administered its Medicaid program through a "section 1115 demonstration project." Approval Letter at 3. Under § 1115 of the Social Security Act, the HHS Secretary has authority to approve "experimental, pilot, or demonstration project[s] which, in the judgment of the Secretary, [are] likely to assist in promoting the objectives" of the

Act. *Id.* § 1315(a).[1] These programs reflect Congress's judgment that States not only have different public health needs, but States may also develop innovative methods of addressing those needs. Accordingly, to grant States necessary flexibility to address their needs, the Secretary may waive certain Medicaid requirements. *Id.* § 1315(a)(1). Since January 1994, Tennessee successfully administered its Medicaid program through a demonstration project that became "TennCare II" in 2002; Tennessee and CMS amended TennCare II, and CMS reliably renewed TennCare II at regular intervals. *See* Approval Letter at 3. After its latest renewal, TennCare II was set to expire June 30, 2021. *Id.*

This case concerns the successor to TennCare II, called TennCare III. Tennessee initially submitted, in November 2019, a proposal to alter TennCare II's financing model and grant Tennessee greater administrative flexibility to support Tennessee's goals: broad access to care, high quality care, improved health outcomes, fiscally sustainable program administration, and innovative solutions to delivering healthcare more effectively. *See* TennCare II Demonstration Amendment 42, Modified Block Grant and Accountability (November 20, 2019), https://bit.ly/3uLW7lm ("Tennessee Proposed Amendment").[2] CMS later approved TennCare III for a period of ten years

---

[1] *See* Medicaid.gov, State Waivers List, https://bit.ly/3y7GQxl (cataloging myriad § 1115 demonstration projects).

[2] CMS did not approve every proposal Tennessee submitted. Approval Letter at 9.

to "build[] on the state's past successes of managing [its] Medicaid program efficiently." Approval Letter at 4.[3]

TennCare III is substantially similar to its predecessor, but it "grant[s] the state additional administrative flexibility to implement its program in exchange for taking on some financial risk" through a modified financing model. *Id.* Importantly, TennCare III does not diminish coverage or benefits relative to TennCare II: "[U]nder [TennCare III], the state may only *expand benefits and coverage* under this demonstration authority; *benefits and coverage cannot be reduced*, as the state is required to maintain the level of benefits and coverage that are in place as of December 31, 2020." *Id.* at 10 (emphases added).

TennCare III improves on TennCare II in the following ways:

**Financing.** In line with CMS's recent guidance on Medicaid financing, TennCare III employs a defined, aggregate cap on program funding "based on established recent historical state costs and enrollment for most populations covered under the demonstration." *Id.* at 4.[4] Like all Medicaid demonstration projects authorized

---

[3] CMS had previously issued guidance that it would, "[w]here possible[,] . . . approve the extension of routine, successful, non-complex section 1115(a) waiver and expenditure authorities in a state for a period up to 10 years." CMCS Informational Bulletin: Section 1115 Demonstration Process Improvements 3 (Nov. 6, 2017), https://bit.ly/3hmOpu4.

[4] *See* CMS, State Medicaid Director Letter #18-009: Budget Neutrality Policies for Section 1115(a) Medicaid Demonstration Projects 4 (Aug. 22, 2018), https://bit.ly/3hx0kG7 (explaining that one alternative approach to the budget neutrality calculation that CMS has approved is the aggregate limit model, often referred to as an "aggregate cap," which places a fixed total dollar cap on state expenditures for the demonstration for which federal funds can be obtained).

under § 1115, TennCare III is "budget neutral," which means that the project will not result in greater costs to the federal government than the federal government would have incurred absent the project. *See* CMS, State Medicaid Director Letter #18-009: Budget Neutrality Policies for Section 1115(a) Medicaid Demonstration Projects 1-2 (Aug. 22, 2018), https://bit.ly/3hx0kG7 (explaining budget neutrality requirement).

Under TennCare III's aggregate cap financing model, Tennessee's Medicaid total aggregate expenditures are capped for purposes of receiving federal funds. Approval Letter at 4. This cap includes a "risk corridor," however, under which the (1) State is held harmless for up to a 1% increase over base enrollment, and (2) federal government is held harmless for up to a 1% decrease in base year enrollment. *Id.* Beyond this 1% range, the aggregate cap will either rise or fall based on enrollment. *Id.*

Importantly, Tennessee will be able to use up to 55% of any shared savings under the cap to reinvest in state health programs. *Id.* at 5, 6 (describing the "Designated Savings Investment Programs"). In other words, if the State "underspends" relative to the cap, it *may* use a portion of the savings to "support the provision of health-related services that are otherwise state-funded and are not eligible for Medicaid funding." *Id.* at 6.

But to use a portion of these underspent savings in that manner, the State must also "meet or exceed targets on the set of metrics for which shared savings can be qualified." *Id.* Rather than simply giving Tennessee a portion of the savings under the cap, TennCare III requires the State to submit at least 10 quality measures that

CMS must approve. *Id.* Then, the State is only eligible to its full share of funds for reinvestment if it meets all metrics annually. *Id.* And, if the State does not meet its annual metrics, it is subject to escalating compliance mechanisms. *Id.* at 6-7. Thus, TennCare III both (1) places conditions on Tennessee's ability to receive its portion of cost-savings; and (2) incorporates accountability mechanisms to ensure the State complies with those conditions. According to CMS, this will allow the State to "better manage its limited resources in such a way that may result in achieving savings, which in turn can be used to pay for expanded state health programs." *Id.* at 10.

In short, CMS concluded that TennCare III's financing model—and its rein-vestment of cost savings into other public health programs—would improve the State's Medicaid program: "By allowing the state to receive [funding] for these health-related programs, CMS is enabling the state to continue to improve health outcomes and increase the efficiency and quality of care that advance Medicaid objectives." *Id.* at 7.

**Additional Program Flexibilities.** TennCare III provides the State with several tools that permit the State to adapt its program to better serve its citizens:

- **Administrative Flexibilities:** Tennessee may add benefits and cover-age to its plan without seeking CMS approval, which will allow the State to respond to changing conditions and better manage its program. *Id.* at 5. This authority is not unlimited, as "[a]ny additional populations must be coverable under the state plan, and new benefits must be allowable under the state plan or through authority in [defined sections of the Act]." *Id.*

- **Pharmacy Flexibilities:** Tennessee (1) may "collect . . . manufacturer drug rebates and negotiate other supplemental rebates directly with drug manufacturers"; (2) has authority to decline to cover certain medi-cations if "there is at least one drug available per therapeutic class . . .with the exception of certain protected drug classes;" and (3) may

"exclude certain new drugs from its formulary, with an exceptions process for specialty drugs." *Id.* at 5-6. Though this authority is innovative in the context of Medicaid, it is common practice for both Medicare and private insurers.

- **Uncompensated Care Pools:** Tennessee may control the level of "uncompensated care" funding for hospitals—which covers the costs of providing medical services to those who are uninsured or otherwise unable to pay for medical services. *Id.* at 6. And the State has authority to promulgate the "distribution methodology for [hospitals'] virtual disproportionate share hospital (DSH) and uncompensated charity care pools, under the aggregate cap." *Id.*

- **Fraud Penalties:** Tennessee has the authority to "suspend Medicaid eligibility for individuals who have been convicted of Medicaid fraud in state or local courts for a period of up to 12 months." *Id.* at 7.

**Monitoring.** The State will be subject to "robust" reporting requirements, as CMS will closely monitor the project to "assess[] the performance of the demonstration and whether the demonstration is effective in achieving the objectives of the program." *Id.* at 7-9 (exploring reporting and monitoring plan).

Before its eventual approval, CMS submitted TennCare III for public comment from November 27, 2019 to December 27, 2019. Approval Letter at 11; *see* Medicaid.gov Public Comment Docket for TennCare III, https://bit.ly/2Rh1Xg5.

After reviewing and responding to the public comments, CMS approved TennCare III on January 8, 2021. *See* Approval Letter at 11-15 (responding to public comments). Overall, CMS concluded that TennCare III would (1) "furnish medical assistance in a manner that improves the sustainability of the safety net;" and (2) "expand coverage and improve health outcomes." *Id.* at 9-10.

Plaintiffs sued to vacate TennCare III on April 22, 2021. Currently, the Federal Defendants' answer is due June 28, 2021. *See* Dkt. No. 13 (May 5, 2021).

## ARGUMENT

### I.   THE STATE OF TENNESSEE IS ENTITLED TO INTERVENE AS A MATTER OF RIGHT UNDER RULE 24(a)(2).

Non-parties are entitled to intervene as a matter of right in an action when the proposed intervenor: (1) submits a "timely" motion to intervene; (2) "claims an interest relating to" the subject matter of the action; (3) "is so situated that disposing of the action may, as a practical matter, impair or impede [its] ability to protect its interest"; and (4) can show that "existing parties [do not] adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Tennessee satisfies each of those elements here.

In similar cases, courts in this jurisdiction have granted intervention to States seeking to defend their Medicaid programs. *Gresham v. Azar*, 363 F. Supp. 3d 165, 173 (D.D.C. 2019) ("The State of Arkansas has since intervened as a Defendant."); *Stewart v. Azar*, 313 F. Supp. 3d 237, 248 (D.D.C. 2018) ("the Court granted Kentucky's Motion for Intervention.").

### A.   Tennessee's Motion—Filed Within Weeks Of The Complaint And Before The Federal Defendants Have Filed Their Answer—Is Timely.

Whether an intervention motion is timely "is to be judged in consideration of all the circumstances, especially weighing the factors of [1] time elapsed since the inception of the suit, [2] the purpose for which intervention is sought, [3] the need for intervention as a means of preserving the applicant's rights, and [4] the probability of prejudice to those already parties in the case." *Karsner v. Lothian*, 532 F.3d 876, 886 (D.C. Cir. 2008) (quoting *United States v. British Am. Tobacco Austl. Servs., Ltd.*, 437 F.3d 1235, 1238 (D.C. Cir. 2006)). Here, each factor weighs in favor of Tennessee.

First, Tennessee has moved to intervene mere weeks after Plaintiffs filed their Complaint and before the Federal Defendants have entered an appearance or filed their answer. Under controlling precedent, this alone establishes timeliness. *See id.* ("less than one month elapsed between Karsner's filing of his petition in the district court and the Commissioner's motion to intervene."); *accord Crossroads Grassroots Policy Strategies v. FEC*, 788 F.3d 312, 320 (D.C. Cir. 2015) ("The Commission has never questioned timeliness, most likely because Crossroads filed an intervention motion before the FEC had even entered an appearance."); *Fund For Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003) ("The NRD moved to intervene less than two months after the plaintiffs filed their complaint and before the defendants filed an answer.").

Second, Tennessee seeks intervention to defend its own Medicaid program, the sole issue in this case. Third, because of its unique interest in TennCare III, Tennessee would suffer particular prejudice if this Court denied the State the ability to vindicate its sovereign interest in the defense (and eventual administration) of its Medicaid program. Finally, the existing parties to the lawsuit will suffer no prejudice if Tennessee is permitted to defend its interests. Tennessee's intervention will cause no delay, as the Federal Defendants are not required to file their answer to Plaintiffs' Complaint until June 28, 2021. *See* Dkt. No. 13 (May 5, 2021). And no party has filed substantive motions. In short, Tennessee seeks to join this litigation at the outset and will not create any undue procedural complexity, as it intends to defend TennCare III.

**B.** **Tennessee Has Plain Interests In The Validity And Administration Of TennCare III.**

Tennessee's interests in this litigation range from its general interest in its Medicaid program to its specific interests in TennCare III's individual provisions. All of these interests meet Rule 24's "interest" requirement, which "is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967).

Broadly, Tennessee has an interest in the validity and administration of its Medicaid program. *See Trainor v. Hernandez*, 431 U.S. 434, 444 (1977) (recognizing the States' interests in public-assistance programs); *see also* Dkt. No. 15, *Texas v. United States*, No. 4:18-cv-00167-O (N.D. Tex. April 9, 2018) (successful motion to intervene in Affordable Care Act litigation to defend States' "interests in protecting their states' unique healthcare infrastructures" and Medicaid programs brought by, among other States, California).[5] Under the Act, States have statutorily defined authority to develop and administer Medicaid plans. 42 U.S.C. § 1396a(a); *see United States v. Speqtrum, Inc.*, 47 F. Supp. 3d 81, 84 (D.D.C. 2014) ("States are the primary drivers of Medicaid regulation."); *Arkansas Dep't of Human Servs. v. Sebelius*, 818 F. Supp. 2d 107, 108 (D.D.C. 2011) ("Each state administers its own Medicaid program

---

[5] *See Hudson v. Campbell*, 663 F.3d 985, 988 (8th Cir. 2011) ("Missouri Medicaid has an important interest in administering benefits in a manner that ensures that those of its citizens who are in need of and who are eligible for those benefits receive them."); *Crowe, ex rel. Crowe v. Robinson*, No. 1:08CV181-B-D, 2010 WL 346844, *2 (N.D. Miss. Jan. 22, 2010) ("the State of Mississippi certainly has an important interest in administering its Medicaid program.").

in accordance with federal statutory and regulatory requirements and pursuant to the terms of its state Medicaid plan.") (citations omitted). The central role that States play under the Act corresponds with their "quasi-sovereign interest 'in the health and well-being . . . of [their] residents.'" *State ex rel. Schmitt v. Bernhardt (In re Gov't of Province of Manitoba)*, 923 F.3d 173, 178 (D.C. Cir. 2019) (quoting *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 607 (1982)).

Discharging its role under the Act, Tennessee has long worked with CMS to develop, refine, and maintain its Medicaid program. TennCare III is simply the State's latest iteration (replacing TennCare II, which expires by its own terms June 30 of this year). Approval Letter at 3; *Nuesse*, 385 F.2d at 700 ("This admixture of national and state policies, attaching national legal force to the state policy, yields the corollary that a state official directly concerned in effectuating the state policy has an 'interest' in a legal controversy involving the [federal official] which concerns the nature and protection of the state policy.").

In addition to Tennessee's broad interest in TennCare III, the State has specific interests in TennCare III's many component parts. For example, Tennessee has a "valid interest in preserving the fiscal integrity of its programs." *Shapiro v. Thompson*, 394 U.S. 618, 633 (1969); *accord Hernandez*, 431 U.S. at 444 (noting state interest in "vindicat[ing] important state policies such as safeguarding the fiscal integrity of [public-assistance] programs"); Tenn. Code § 71-5-102(d) ("The bureau of TennCare shall have the authority to develop and implement initiatives or program modifications to control the costs of the TennCare program to the extent permitted under

11

federal law and the TennCare waiver"). To that end, TennCare III incorporates an innovative financing structure that allows Tennessee to reinvest certain cost savings into its public health programs, as explained above at pp.5-6. *See* Approval Letter at 5-7.

Similarly, TennCare III incorporates various new flexibilities that will allow the State to better administer a more effective Medicaid program with benefits for Tennessee's Medicaid-eligible citizens, as described above at pp.6-7.

### C.   Tennessee's Interests In The Validity And Administration Of TennCare III May Be Impaired By This Action.

Rule 24 requires Tennessee to show that "disposing of the action *may as a practical matter* impair or impede [its] ability to protect its interest." Fed. R. Civ. P. 24(a)(2) (emphasis added). As the D.C. Circuit has held, this requires courts to analyze the "practical consequences of denying intervention," and whether "reestablishing the status quo" if Plaintiffs succeed "will be difficult and burdensome." *Fund For Animals*, 322 F.3d at 735 (citations omitted). Tennessee satisfies this low hurdle.

Plaintiffs' goal in this lawsuit is to vacate Tennessee's Medicaid plan and prevent Tennessee from administering TennCare III, which plainly would impair Tennessee's interests in the validity and eventual administration of the project and its component parts. TennCare represents approximately 20 percent of the State's budget, such that vacating the approval of TennCare III will throw one fifth of the State's budget and the care of 1.5 million Medicaid beneficiaries into disarray.[6]

---

[6] *See* Division of TennCare, TennCare Overview, https://bit.ly/3u0hbmW; Division of TennCare, Fiscal Year 2022 Budget 13, https://bit.ly/3eVWpk8.

Significantly, since 1994, Tennessee has operated virtually the entirety of its Medicaid program under the auspices of a § 1115 demonstration project. Consequently, all Medicaid beneficiaries in Tennessee currently receive all or some of their Medicaid benefits through TennCare III—Tennessee's most recently approved demonstration project. Vacating the approval of TennCare III will therefore result in the termination of the structure the State has used to administer its Medicaid program for decades. *See* Approval Letter at 3-4. Furthermore, Tennessee provides healthcare coverage to a number of individuals under TennCare III who would otherwise be ineligible for Medicaid. *See id.* at 20. Ending the TennCare III demonstration would result in a loss of Medicaid for these state residents.

In addition to its broad consequences, vacating TennCare III would impede the State's ability to reinvest saved funds into its other public health programs. *See supra* pp.4-6 (describing TennCare III's financing model). It would likewise diminish the State's ability to better administer its Medicaid program using the flexibilities granted to the State by TennCare III. *See supra* pp.6-7 (describing new flexibilities).

At bottom, "if Plaintiffs were successful in this case, the economic and regulatory interests" of Tennessee "would likely be impaired. Other courts in this jurisdiction have found that similar situations justified intervention." *WildEarth Guardians v. Jewell*, 320 F.R.D. 1, 4 (D.D.C. 2017) (collecting cases). This court should as well.

### D. The Federal Government May Inadequately Represent Tennessee's Interests.

Finally, Tennessee cannot rely on the Federal Defendants to adequately represent the State's interests, because only the State can represent its sovereign

interests. *See* Fed. R. Civ. P. 24(a)(2); *WildEarth Guardians*, 320 F.R.D. at 5 ("While the Federal Defendants' duty runs to the interests of the American people as a whole, the state-intervenors will primarily consider the interests of their own citizens. . . . [The States] may have unique sovereign interests not shared by the federal government."); *Akiachak Native Cmty. v. U.S. Dep't of Interior*, 584 F. Supp. 2d 1, 7 (D.D.C. 2008) ("the existing defendants, the DOI and the Secretary, have no clear interest in protecting Alaska's sovereignty or Alaska's interest").

Tennessee must make a "minimal" showing that the Federal Defendants' representation "may be" inadequate. *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972). "Although there may be a partial congruence of interests [among parties]"—for example, a shared goal in the outcome of litigation—"that does not guarantee the adequacy of representation." *Fund for Animals*, 322 F.3d at 737. As the D.C. Circuit has long explained, this "inadequacy of representation" element is "'not onerous,'" and thus the court has "often concluded that governmental entities do not adequately represent the interests of aspiring intervenors." *Id.* at 735; 736 (quoting *Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986)).[7]

---

[7] *See, e.g.*, *Trbovich*, 404 U.S. at 539 ("the Secretary has an obligation to protect the 'vital public interest in assuring free and democratic union elections that transcends the narrower interest of the complaining union member.'") (quoting *Wirtz v. Local 153, Glass Bottle Blowers Ass'n*, 389 U.S. 463, 475 (1968)); *Smuck v. Hobson*, 408 F.2d 175, 181 (D.C. Cir. 1969) (holding that a school board's ostensible representation of the interests of *all* parents did not provide adequate representation for the interests of *individual parents*, who may hold "more parochial interests" specific to their own children).

Here, the fact that Federal Defendants cannot represent Tennessee's sovereign interests is sufficient to demonstrate inadequacy of representation. *See WildEarth Guardians*, 320 F.R.D. at 5; *Akiachak Native Cmty.*, 584 F. Supp. 2d at 7.

But, at a minimum, the differing roles the State and the federal government play under the Act demonstrate that the Federal Defendants' defense of TennCare III "may be" inadequate; *Trbovich*, 404 U.S. at 538 n.10; as their interests "may not coincide" with Tennessee's interests, *Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 912 n.43 (D.C. Cir. 1977) ("*NRDC*") (internal quotation marks omitted). As explained above at pp.2, 10-11, States have the primary responsibility to administer Medicaid programs. Thus, Tennessee's interest in TennCare III is more "focused" than the Federal Defendants', because Tennessee is "concerned primarily" with actually administering TennCare III—and providing healthcare to its citizens—according to the terms CMS has approved. *Id.* at 912. Indeed, CMS explicitly "recognize[d] that states, as administrators of their Medicaid programs, are in the best position to assess the needs of their respective Medicaid-eligible populations and to drive reforms that result in better health outcomes." Approval Letter at 4.

By contrast, the Federal Defendants' "obligation is to represent the interests of the American people, as expressed in" federal statute. *See Fund For Animals*, 322 F.3d at 736. Thus, they have a much more general interest in upholding the validity of CMS's agency action, which is not the same as the day-to-day practicalities of providing healthcare coverage to Tennessee's citizens. Whereas the Defendants are committed to protecting the interests of all states and ensuring regulatory compliance

15

of all state Medicaid programs, Tennessee is uniquely aware of the specific needs of its program and its members, and it is uniquely situated to defend those interests in this litigation. *See* Tennessee Proposed Amendment at 20 (explaining that Tennessee's proposal is "predicated on the proposition that the state is in a better position than the federal government to direct TennCare spending in order to most effectively meet the needs and promote the health of Tennessee residents").

## II. ALTERNATIVELY, THIS COURT SHOULD GRANT TENNESSEE PERMISSIVE INTERVENTION.

Generally, permissive intervention is proper when a proposed intervenor files a timely motion and "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Likewise, Rule 24(b) expressly provides for intervention by States:

> [T]he court may permit a . . . state governmental officer or agency to intervene if a party's claim or defense is based on: (A) a statute or executive order administered by the officer or agency; or (B) any regulation, order, requirement, or agreement issued or made under the statute or executive order.

Fed. R. Civ. P. 24(b)(2); *Nuesse*, 385 F.2d at 705 ("[Rule 24(b)(2)] considers the governmental application with a fresh and more hospitable approach").[8] Under either permissive intervention prong, Courts should grant permissive intervention when it

─────────────

[8] Courts have interpreted this prong broadly to allow State governments (and not solely "officers" or "agencies") to intervene to defend state policy. *See, e.g.*, *Huff v. Comm'r*, 743 F.3d 790 (11th Cir. 2014) (United States Virgin Islands); *Coffey v. Comm'r*, 663 F.3d 947 (8th Cir. 2011); *Appleton v. Comm'r*, 430 F. App'x 135 (3d Cir. 2011).

"will [not] unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

Here, the State of Tennessee seeks to bring its unique sovereign perspective to the defense of TennCare III—the sole subject matter of the lawsuit. *See supra* pp.10-12 (explaining Tennessee's interest in defense of TennCare III). Thus, Tennessee's defense of TennCare III—that TennCare III and its approval comply with the Administrative Procedure Act and the Social Security Act—will plainly share questions of law and fact in common with this case. *See* Fed. R. Civ. P. 24(b)(1)(B), (b)(2).

Moreover, Tennessee's intervention will not prejudice existing parties to the case. As explained in greater detail at pp.8-9, this case is in its early stages and this Motion comes before Federal Defendants have even filed their answer. The State seeks to defend its Medicaid program, and not add further legal claims or complexity to the litigation. Accordingly, Tennessee's intervention will not cause any delay resulting in prejudice to the parties—either now or at later stages in the proceeding.

Furthermore, while granting Tennessee intervention would not prejudice existing parties, *denying* Tennessee intervention would greatly prejudice Tennessee. If Tennessee is not allowed to defend TennCare III, there will be no party to this litigation representing the State's sovereign interest in its Medicaid program. Courts routinely grant permissive intervention to ensure that similar interests do not go unrepresented. *See, e.g.*, *NRDC*, 561 F.2d at 912-13 (the input of regulated parties would supplement EPA's defense, because those parties have knowledge of the "impact . . . upon their operations"). The "idea of 'streamlining' the litigation . . . should not be

accomplished at the risk of marginalizing those—such as the [proposed intervenor]—who have some of the strongest interests in the outcome." *United States v. City of Los Angeles*, 288 F.3d 391, 404 (9th Cir. 2002).

## CONCLUSION

The State of Tennessee respectfully requests that the Court grant its motion to intervene in this case as Defendant-Intervenor.

May 20, 2021                                        Respectfully submitted,

                                                    */s/ Scott A. Keller*

                                                    Scott A. Keller
                                                    D.C. Bar No. 1632053
                                                    scott@lehotskykeller.com
                                                    Lehotsky Keller L.L.P.
                                                    200 Massachusetts Ave. NW
                                                    Washington, DC 20001
                                                    T: (202) 365-2509
                                                    F: (833) 233-2202

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| BRYLEE McCUTCHEN, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| XAVIER BECERRA, in his official ca- | § | |
| pacity as Secretary of Health and Hu- | § | |
| man Services, et al., | § | Case No. 1:21-cv-01112-TSC |
| | § | |
| Defendants; | § | |
| | § | |
| | § | |
| THE STATE OF TENNESSEE, | § | |
| | § | |
| Proposed Defendant-Intervenor. | § | |

**[PROPOSED] ORDER GRANTING THE STATE OF TENNESSEE'S**
**MOTION TO INTERVENE AS DEFENDANT**

The Court has reviewed the State of Tennessee's Motion to Intervene as De-

fendant. Upon consideration of the Motion, the Court concludes that Tennessee is

entitled to intervene in this case pursuant to Federal Rule of Civil Procedure 24.

**IT IS HEREBY ORDERED** that:

1. The State of Tennessee's Motion to Intervene as Defendant is **GRANTED**.

Tennessee shall be made a Defendant-Intervenor in this action.

2. The Answer in Intervention attached to Tennessee's Motion shall stand as

Tennessee's Answer in this action.

DATED: _____

_____
The Honorable Tanya S. Chutkan
United States District Judge

## CERTIFICATE OF SERVICE

The forgoing document and all attached exhibits were served on Plaintiffs'
counsel on May 20, 2021, using the Court's CM/ECF file and service system. Tennes-
see caused the forgoing document and all attached exhibits to be served on Defend-
ants by Federal Express on May 20, 2021 at the following addresses:

Xavier Becerra
United States Department of Health
and Human Services
200 Independence Avenue SW
Washington, DC 20201

Elizabeth Richter
Centers for Medicare & Medicaid
Services
7500 Security Boulevard
Baltimore, MD 21244

Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue
Washington, DC 20530

U.S. Attorney for the District of Columbia
Civil Process Clerk
555 4th Street NW
Washington, DC 20530

*/s/ Scott A. Keller*

Scott A. Keller
D.C. Bar No. 1632053
scott@lehotskykeller.com
Lehotsky Keller L.L.P.
200 Massachusetts Ave. NW
Washington, DC 20001
T: (202) 365-2509
F: (833) 233-2202